# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JORDAN ALAN NEVES BREWER,<br><br>Plaintiff,<br><br>v.<br><br>TERRY THOMPSON et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING SUMMARY JUDGMENT MOTIONS OF DEFENDANTS PERRY, WOOD, AND RUSSELL**<br><br>Civil No. 1:15-CV-40 TC<br><br>Judge Tena Campbell |

Plaintiff, Jordan Alan Neves Brewer, a former inmate of the Davis County Correctional Facility (DCCF) and the Weber County Correctional Facility (WCCF), filed this *pro se* civil-rights suit alleging, among other things, violations of his Eighth Amendment right to be free from cruel and unusual punishment. *See* 42 U.S.C.S § 1983 (2017). Specifically, Mr. Brewer alleges that Defendants Sheila Perry, a licensed clinical social worker at both facilities; Dr. John Wood, director of medical treatment at both facilities; and Richard Russell, a physician's assistant at WCCF, were deliberately indifferent to Mr. Brewer's serious medical needs when they failed to adequately address Mr. Brewer's complaints of anxiety, insomnia, and back pain.

As ordered, Defendants filed *Martinez* reports and summary-judgment motions addressing Mr. Brewer's claims. These motions are now fully briefed and before the Court.

## UNDISPUTED FACTS

The facts are drawn from Defendants' *Martinez* reports: Defendants' affidavits and DCCF and WCCF records of medical policies and Mr. Brewer's medical treatment. Mr. Brewer's response to the summary-judgment motion primarily uses these same sources, making

unpersuasive arguments about how they may be interpreted in certain ways to bolster Mr. Brewer's claims. To these, he added his own unsworn statement, medical records from treatment he received at other facilities (both before and after his stays in DCCF and WCCF), copies of drug indications and Wikipedia definitions of his allegedly diagnosed illnesses, and news reports of other inmates who had allegedly received poor medical treatment at DCCF and WCCF. Mr. Brewer's submissions are either inadmissible or are irrelevant to Defendants' alleged provision of inadequate medical treatment and are not relied on here.

(1) Under United States Marshal Service (USMS) custody, Mr. Brewer was held in DCCF (first) and WCCF (second), from about October 13, 2011, through December 5, 2012. (Docket Entry # 61, Defendants' *Martinez* Rep't, p. 2.)

(2) DCCF medical personnel (including and under supervision of Dr. Wood) saw Mr. Brewer at least sixteen times, on these dates: 10/13/11, 10/15/11, 11/07/11, 11/09/11, 12/28/11, 2/21/12, 3/28/12, 4/6/12, 5/1/12, 5/23/12, 5/25/12, 6/14/12, 6/18/12, 7/30/12, 8/6/12, and 8/7/12. Other times, they tried to see Mr. Brewer, but he was unavailable. They also "reviewed [past] medical records, including x-rays and medical related faxes or calls concerning [Mr. Brewer's] care on" (at least) 11/03/11, 11/17/12, 2/1/12, 2/8/12, 4/12/12, 4/19/12, and 5/2/12. (*Id*. at ¶¶ 41, 46, 64, 68.)

(3) During his time at DCCF, Mr. Brewer averaged at least one medical appointment per month--even as many as three in one month. (*See id*. at ¶ 46.) Past medical providers and a specialist were consulted and sometimes their treatment advice was adopted. (*See id*. at ¶¶ 47, 49, 51, 52, 53, 56.) X-rays were taken and reviewed. (*Id*. at ¶ 55.)

(4) When treating an inmate, Dr. Wood independently evaluates the inmate's condition.

He reviews available medical records and history (as he did here) but may choose to discontinue a past medical provider's course of treatment. He uses his own "professional judgment, the patient's history, and [his] personal observations of the inmate's current condition to determine the proper treatment plan." (*See id*. at ¶ 43.)

(5) During medical visits, Mr. Brewer would sometimes ask for certain drugs, like Wellbutrin and Remeron; however, DCCF medical personnel, under Dr. Wood's guidance, decided to treat him with different drugs deemed more suitable. (*See id*. ¶¶ 48, 49, 51, 63)

(6) On May 23, 2012, Defendant Sheila Perry, LCSW, saw Mr. Brewer about his request for different medication from that which had been prescribed and referred him to Dr. Wood. On August 7, 2012, she saw Mr. Brewer again for anxiety and depression and educated him as to "distraction and breathing techniques." (*See id*. at ¶¶ 62, 63, 67.)

(7) On September 11, 2012, Mr. Brewer filed a grievance, stating he had been prescribed Wellbutrin and Trazadone (apparently by outside personal physician(s)), but was not getting them at DCCF. Neither of those drugs was allowed by DCCF policy but medical staff evaluated and treated Mr. Brewer based on the prevailing standard of care with alternative prescriptions for anxiety and depression, like Lexapro, Celexa, and Prozac. (*See id*. at ¶ 69.)

(8) After Mr. Brewer's transfer to WCCF, Mr. Brewer was seen by medical staff there for back pain and depression at least eleven times in about three months: 9/13/12, 9/17/12, 9/21/12, 9/25/12, 10/1/12, 10/10/12, 10/11/12, 10/24/12, 10/25/12, 11/21/12, and 11/25/12. His past medical records were reviewed and he was freshly evaluated.

> During every visit, action was taken to try to improve Mr. Brewer's plight--i.e.,
> medication was prescribed; dosages were modified or adjusted; follow-up
> appointments were arranged; an outside MRI and orthopedic evaluation were ordered.
> (*See id*. at ¶¶ 70, 71, 73, 74, 75, 76, 77, 78, 80, 81, 83, 84, 87, 88, 89.)

(9) Mr. Brewer was then taken into custody by USMS. (*See id*. at ¶ 71.)

In summary, during his approximately fourteen months at DCCF and WCCF, Mr. Brewer was seen and his treatment reviewed over thirty times by jail medical personnel for various complaints, including back pain, anxiety, and depression. According to the DCCF and WCCF records and *Martinez*-report documentation, every time Mr. Brewer requested medical visits, jail medical personnel attempted attention and treatment.

## SUMMARY-JUDGMENT STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant, asserting there is no genuine dispute about material facts, must support his assertion "by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that . . . an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c). A main purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323−24 (1986). The party moving for summary judgment has the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. This burden may be met merely by identifying portions of the records

4

showing an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56 requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nomovant." *Adler v. WalMart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (citations omitted). Mere allegations and references to the pleadings will not suffice. The nonmovant must cite to materials that would be admissible at trial to create a material issue of fact. Fed. R. Civ. P. 56(c). The court, however, must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (citations omitted). If the non-movant fails to meet its burden as to one element of a claim, summary judgment is appropriate on the claim. *Celotex*, 477 U.S. at 323.

To defeat a summary-judgment motion, a party may not merely rest on allegations in the complaint and other filings. Instead, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Mr. Brewer must present relevant,

admissible, probative evidence supporting his allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citations omitted).

## DEFENDANTS' SUMMARY-JUDGMENT MOTIONS

Defendants move for summary judgment on Mr. Brewer's claims against them, asserting that Mr. Brewer has not shown a constitutional violation.

Mr. Brewer has alleged that the medical care offered him was so deficient as to constitute cruel and unusual punishment, violating the Eighth Amendment. The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate food, clothing, shelter, *and medical care.*" *Craig v. Eberly*, 164 F.3d 290, 495 (10th Cir. 1998) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)) (emphasis added).

To state a cognizable claim under the Eighth Amendment for failure to provide medical care, a prisoner must "'allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (emphasis omitted). To determine whether a defendant exhibited deliberate indifference, any Eighth Amendment claim must be evaluated under objective and subjective prongs: "Was the deprivation sufficiently serious?" and, if so, "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *accord Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999).

The Eighth Amendment's subjective deliberate-indifference inquiry requires Mr. Brewer to show that prison officials were consciously aware that he faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v.*

6

*Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is "more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.,* 163 F.3d 982, 988 (7th Cir. 1998) (citation omitted). In other words, the treatment must be "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [an inmate's] condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, which is that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

Defendants here offer undisputed evidence that they took Mr. Brewer's complaints seriously. They saw Mr. Brewer at least thirty times; reviewed his prior medical records and test results; added, subtracted, switched and modified medications at almost every visit in response to Mr. Brewer's reports; referred to outside specialists; took x-rays and ordered an MRI. Defendants' substantial, uncontroverted evidence shows that their treatment of Mr. Brewer was more than adequate. Having thoroughly reviewed Mr. Brewer's medical records, the court is hard pressed to imagine how he could have received more consistent and attentive medical treatment.

Essentially, Mr. Brewer's only gripe is that Defendants sometimes did not provide the specific medications and treatments he wanted. However, Defendants were not required to honor his preferences. "It is well-settled that a mere difference of opinion regarding the proper treatment for a medical condition is not sufficient to show deliberate indifference, and medical personnel are entitled to substantial deference in choosing a proper course of treatment." *Todd v.*

7

*Bigelow*, No. 2:09-cv-808-DAK, 2012 U.S. Dist. LEXIS 24252, at *17 (D. Utah Feb. 24, 2012). A prisoner who "merely disagrees with a diagnosis or prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 811 (citations omitted); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

"Generally, neither the fact that a prisoner continues to experience pain despite treatment nor the fact that jail physicians refuse to provide him with the specific pain medications he requests is sufficient to state a constitutional claim." *Dickerson v. Strain*, No. 08-4651, 2009 WL 2023866, at *5 (E.D. La. July 9, 2009) (citations omitted); *accord Mosley v. Snider*, No. 00-6310, 10 Fed. App'x 663, 664 (10th Cir. Mar. 22, 2001) (unpublished) (holding no deliberate indifference where physician discontinued prisoner's preferred medication when it was determined unnecessary and other prescription provided); *see also Boyett v. Cnty. of Wash.*, No. 06-4315, 282 Fed. App'x 667, 674 (10th Cir. 2008) (unpublished) ("[Medical professional]'s prescription of substitute medication for [inmate] does not demonstrate deliberate indifference.") (citations omitted); *Jones v. Garden*, No. 2:06-CV-527 DAK, 2007 U.S. Dist. LEXIS 45313, at *13 (D. Utah June 21, 2007) (unpublished) ("While prison officials are constitutionally required to ensure that inmates receive adequate care, specific decisions as to which particular drug an inmate receives are left to the discretion of prison medical personnel . . . .").

*Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992), is instructive. There, a plaintiff/inmate injured himself playing basketball and was treated by prison medical personnel with pain medication. *Id.* at 1536–37. When the medical personnel did not give plaintiff the specific pain

medication he wanted, or refer plaintiff to a particular specialist that he thought he needed, plaintiff sued, alleging that defendants' refusal of this treatment violated his Eighth-Amendment rights. *Id.* at 1537. The *Ledoux* court upheld the lower court's summary-judgment ruling for the defendants, concluding that "Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is, as the district court correctly recognized, insufficient to establish a constitutional violation." *Id.* The fact that the plaintiff received *some* medication for his pain was sufficient. *Id.; see also Todd*, 2012 U.S. Dist. LEXIS 24252, at *18 (stating "fact that Defendants tried to accommodate Plaintiff [by offering alternative medication] showed that they were not deliberately indifferent to his needs").

To support his argument that Defendants were deliberately indifferent to his anxiety, depression and back pain, Mr. Brewer asserts that other doctors thought he needed different medications than the ones prescribed and he needed chiropractic adjustments. However, the fact that others may have provided these treatments is not binding on Defendants. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (holding "variations in the views"—between prison-affiliated doctors that no surgery was needed and private physician recommending and performing surgery—did not violate Eighth Amendment); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). Rather, as was the appropriate and expected practice of any medical provider, Defendants conducted their independent evaluations of Mr. Brewer's condition, and

9

used their individual professional medical judgment to determine what drugs, diagnostic tools, and other treatments to prescribe to and order for Mr. Brewer.

Defendants conducted many physical and mental examinations of Mr. Brewer, and, based on those findings, used their professional judgment to decide which medications and treatments to provide Mr. Brewer. When Mr. Brewer complained that a particular pain reliever or antidepressant was not working, for instance, Defendants adjusted his medications. While Defendant's treatment may not have been Mr. Brewer's preferred course, it was nonetheless a course of treatment determined based on Defendants' considered medical judgment. Thus, Mr. Brewer cannot show that Defendants were deliberately indifferent to his conditions.

## CONCLUSION

Defendants have satisfied their burden on summary judgment of showing that Defendants did not violate Mr. Brewer's Eighth Amendment rights and showing an absence of evidence to support Mr. Brewer's claims. Because Defendants did not violate Mr. Brewer's rights, summary judgment for Defendants is appropriate on Mr. Brewer's claims against them.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

**(1)** Defendants' Motions for Summary Judgment (Docket Entry #s 62 & 71) are **GRANTED.**

**(2)** Defendants' Motion to Stay Discovery (Docket Entry # 47) is **DENIED** as moot.

**(3)** Defendants' motion to strike Mr. Brewer's sur-reply (Docket Entry # 108) is **DENIED**.

**(4)** Mr. Brewer's motion to stay proceedings due to availability of expert witness (Docket Entry # 118) is **DENIED** as moot.

**(5)** Defendants Perry, Russell and Wood are **DISMISSED** from this case.

DATED this 28th day of April, 2017.

BY THE COURT:

_____
JUDGE TENA CAMPBELL
United States District Court