SUSAN BLACK DUNN, #3784
W. LEWIS BLACK, #13497
**DUNN & DUNN, P.C.**
2455 East Parley's Way, Suite 340
Salt Lake City, Utah 84109
Tel:  (801) 521-6677
Fax: (801) 521-9998
sblack@dunndunn.com
wlblack@dunndunn.com
*Attorneys for Weber County*
  *and Davis County Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| JORDAN ALAN NEVES BREWER,<br><br>PLAINTIFF,<br><br>V.<br><br>TERRY THOMPSON, KEVIN BURTON, JOSEPH PORTER, KERI SEKULICH, JEREMY MILLER, JORDAN BONYAI, PAT COLLINGSWORTH,  TODD RICHARDSON, JEFFREY JENSEN, AND SCOTT MANFULL, ET AL.,<br><br>DEFENDANTS. | **WEBER COUNTY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION**<br><br><br>CASE NO. 1:15-CV-00040 TC<br><br>JUDGE TENA CAMPBELL |

Pursuant to Fed R. Civ. P. 56 and DUCivR 56-1(c), Defendants Terry Thompson, Joseph

Porter, Keri Sekulich, Jeremy Miller, Jordan Bonyai, and Pat Collingsworth (collectively the

"Weber County Defendants"), by and through their counsel of record, hereby file this

Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment on Fifth Cause

of Action (the "Motion") (Docket No. 149). Plaintiff filed his Motion for Partial Summary Judgment on June 5, 2017.

## INTRODUCTION

Plaintiff argues that Weber County Defendants violated his First Amendment rights by enacting and enforcing WCCF Policies JE 01/02.02, JE 01/02.3, and JE 01/02.04 restricting all outgoing mail from inmates at the WCCF to the use of postcards. According to Plaintiff, this policy "unduly censored" his outgoing mail. Plaintiff argues that Weber County Defendants cannot demonstrate that these policies further "an important or substantial" government interest, citing *Procunier v. Martinez*, 4116 U.S. 396, 413 (1974), overruled by *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Plaintiff also argues that the postcard-only policy is "substantially more restrictive than necessary," also citing *Procunier*. In addition, Plaintiff apparently argues that the policy violated his Fourteenth Amendment rights because Weber County Defendants did not provide him with any "procedural safeguards." Plaintiff also argues that the material facts relating to his Fifth Cause of Action are "not disputed" and that summary judgment is warranted.

Plaintiff's arguments all fail. WCCF Policies JE 01/02.02, JE 01/02/3, and JE 01/02.4 all meet the standards established by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The postcard-only policy is reasonably related to legitimate penological interests. The policy does not prohibit all written communication by inmates, and Plaintiff had additional alternative methods of exercising his free speech rights. Plaintiff has not adequately demonstrated that his proposed alternative means of accommodating his constitutional right would not adversely affect the facility's officers, staff, and inmates. Additionally, Plaintiff has failed to demonstrate the existence of ready alternatives to the facility's policies that fully accommodate his rights at *de minimis* cost to valid penological

2

interests. Plaintiff has failed to demonstrate that the material facts regarding his First Amendment claims are undisputed or that he is entitled to judgment as a matter of law.

Plaintiff's Fourteenth Amendment claims likewise fail the summary judgment standard. Plaintiff was provided with adequate due process through WCCF's grievance process. Plaintiff filed numerous grievances regarding the policy. His grievances were reviewed at the different levels required by WCCF Policy JD 05. He had a meaningful opportunity to be heard. The fact that his grievances were not granted does not amount to a lack of due process. Plaintiff has failed to demonstrate that the material facts regarding his Fourteenth Amendment claims are undisputed or that he is entitled to judgment as a matter of law.

For these reasons, summary judgment in Plaintiff's favor is not appropriate in this matter. Weber County Defendants respectfully request that the Court deny Plaintiff's motion.

## RESPONSE TO PLAINTIFF'S STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

Weber County Defendants respond to Plaintiff's Statement of Elements and Undisputed Facts as follows. Plaintiff's statements are in *Italics*. Weber County Defendants' Responses are in **Bold**.

**A. First Amendment**

1.      *Outgoing prisoner mail cannot be censored unless (1) it serves an important governmental interest, and (2) the censorship cannot be any more restrictive than necessary. Procunier v. Martinez, 416 U.S. 396, 413 (1974), abrogated in part by Thornburgh v. Abbott, 490 U.S. 401, 411-412 (1989) (limiting Procunier to outgoing correspondence). Further, the right to correspond is a protected liberty interest protected by due process, and inmates are entitled to written notice when outgoing mail is rejected, a "reasonable opportunity to protest"*

3

the censorship, and a referral of complaints to someone other than the censor. _Procunier_, 416 U.S. at 417-19. (See Motion, pp. 2-3.)

**Weber County Defendants' Response:    The United States Supreme Court's rulings in _Procunier_ and _Thornburgh_ speak for themselves. Weber County Defendants argue that Plaintiff states the wrong legal standard for his claim. It is the position of the Weber County Defendants that the postcard-only policy should be evaluated pursuant to the test established in _Turner v. Safley_, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Furthermore, as argued more fully below, Weber County Defendants argue that Plaintiff received the required procedural due process through his use of the WCCF grievance process.**

2.    _The relevant policies subject to this cause of action are JE 01/02.02, JE 01/02.03, and JE 01/02.04 See Dkt # 73-10, pp. 25-26, 43-45._ (See Motion, p. 3)

**Weber County Defendants' Response:    Undisputed that these policies deal with the postcard-only policy. WCCF Policies JE 01/02.02, JE 01/02.03, and JE 01/02.04 speak for themselves. Weber County Defendants also point to WCCF Policy JD 05, regarding the grievance procedure, as relevant to the issue of Plaintiff's procedural due process claims.**

3    _Defendant Thompson has raised cost, and safety and security precautions. See Declaration of Terry Thompson ("Thompson Decl.."), Dkt # 73-1, p. 7, ¶¶ 35-36._ (See Motion, pp. 3-4.)

**Weber County Defendants' Response:    The statements made in paragraphs 35-36 of Defendant Thompson's Declaration speak for themselves. Weber County Defendants have stated the following valid penological interests supporting the postcard-only policy: (1) saving time and manpower resources; (2) preventing misuse of the mail system; (3)**

4

efficiently ascertaining what WCCF inmates receive and send through the mail; (4) allowing WCCF personnel to focus more attention on maintaining safety, security and order at WCCF for inmates, guards, and staff; and (5) reducing costs. *See* Declaration of Sheriff Terry Thompson ("First Thompson Declaration"), Docket No. 73-1, ¶¶ 35-37; Second Declaration of Sheriff Terry Thompson ("Second Thompson Declaration"), Docket No. 99-1, ¶¶ 14-16, Weber County and Davis County Defendants Motion for Summary Judgment, Docket No. 74, pp. 25-26.

4.      *Despite the restriction on outgoing mail, mailroom staff still open and inspect sealed personal mail. See Dkt #73-10, pp. 41-42.* (*See* Motion, p. 4.)

**Weber County Defendants' Response:    Weber County Defendants admit that WCCF mailroom policies authorize them to open and inspect sealed personal mail directed to inmates.**

5.      *The only procedure utilized for censoring an inmate's outgoing mail is to alert the Jail Commander. See Dkt # 73-10, pp. 45.* (*See* Motion, p. 4.)

**Weber County Defendants' Response:    Weber County Defendants object to this statement to the extent that it misstates the record. WCCF Policy JD 05 outlines the grievance procedure inmates can use to report grievances. See First Thompson Declaration (Docket No. 73-1), ¶¶ 9-13. Plaintiff utilized this grievance system to complain about the postcard-only policy. See First Thompson Declaration (Docket No. 73-1), ¶¶28-38. Plaintiff does not dispute that he had access to the WCCF grievance system.**

6.      *A simple alternative would be to allow inmates to deposit unsealed envelopes which then could be inspected and sealed by mail staff, or to allow mail staff to open and inspect*

*enveloped mail. See <u>Declaration of Jordan Brewer</u> ("Brewer Decl."), attached hereto, ¶ 15. (See* Motion, p. 4.)

**Weber County Defendants' Response:   Weber County Defendants object to this statement and the statements contained in paragraph 15 of Declaration of Jordan Brewer to the extent that they contain unsubstantiated conclusory and self-serving statements instead of facts supported by the record. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ([T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.). Plaintiff's statement is a self-serving conclusion without factual support in the record, not a statement of undisputed material fact.**

7.     *Plaintiff further points to and relies upon the statements made in his attached declaration and his First Amended Complaint by reference and incorporates them as if they were fully set forth herein. (See* Motion, p. 5.)

**Weber County Defendants' Response:   Weber County Defendants object to this statement and any statements contained in the Declaration of Jordan Brewer and First Amended Complaint to the extent that they misstate the record and contain unsubstantiated conclusory and self-serving statements instead of facts supported by the record. *See Hall*, 935 F.2d at 1111.**

## STATEMENT OF ADDITIONAL MATERIAL FACTS

1.     A true and correct copy of Inmate Request and Grievance Forms completed by Plaintiff while incarcerated at WCCF is attached as Exhibit 11 to Weber County and Davis County Defendants' *Martinez* report (Docket No. 73).

2.      WCCF Policy JE 01 outlines the policies and procedures regarding mail regulations, including incoming and outgoing mail. *See* First Thompson Declaration (Docket No. 73-1), ¶ 27, attached as Exhibit 1 to Weber County and Davis County Defendants' *Martinez* report (Docket No. 73).

3.      WCCF has a policy and procedure for inmates to file grievances, outlined in WCCF Policy JD 05. New inmates receive information concerning the grievance system upon arriving at their housing unit. Copies of this policy are made available for inmates to review during their incarceration at WCCF. *See* First Thompson Declaration, ¶ 9.

4.      Inmates receive assistance from a Housing Unit Officer, Housing Sergeant, or Housing Lieutenant to review current procedure, obtain necessary forms, and receive instructions concerning how to access and utilize the grievance system. *See Id.*, ¶ 10.

5.      A staff member has ten calendar days to respond in writing to an inmate's Level I grievance. If the attempt to resolve the grievance fails, the inmate has three calendar days to complete section II of the Grievance Form and submit it to the Grievance Officer. *See Id.*, ¶ 11.

6.      The Jail Commander/Representative has ten calendar days to provide a written response to the inmate's Level II grievance. An inmate not satisfied with the Jail Commander's decision has three calendar days to appeal the decision to the Weber County Sheriff. *See Id.*, ¶ 12.

7.      Upon receipt of a Level III appeal, the Weber County Sheriff has ten calendar days to provide a written response to the inmate or to schedule a hearing. *See Id.*, ¶ 13.

8.      On October 14, 2012, Plaintiff filed a grievance complaining that outgoing non-legal mail was restricted to postcards rather than letters and requesting that the policy be changed. *See Id.*, ¶ 28.

9. Defendant Sekulich timely and appropriately responded to this grievance on October 18, 2012, re-stating WCCF policy and telling Plaintiff that he could contact his family through other means. *See Id.*, ¶ 29.

10. On October 23, 2012, Plaintiff escalated his grievance to Level II, claiming it violates his First Amendment rights. *See Id.*, ¶ 30.

11. Defendant Porter responded timely and appropriately to this grievance on October 25, 2012, stating that WCCF allows contact with family via mail, phone, or visiting. *See Id.*, ¶ 31.

12. Plaintiff escalated his grievance to Level III, claiming that the postcard-only policy is a direct violation of his right of freedom of speech and religion and requesting that the policy be changed. *See Id.*, ¶ 32.

13. Defendant Thompson reviewed Plaintiff's Level I, Level II, and Level III grievance appeal information. Defendant Thompson denied Plaintiff's grievance on October 29, 2012, for the following reasons: (1) WCCF policy states that mail is not afforded privacy unless it is designated as legal/privileged; (2) the courts have long held that an incarcerated person's rights may be limited or retracted for legitimate reasons; and (3) Plaintiff had alternative ways to communicate with his family and the outside world via mail, email, telephone calls, and personal visits. *See Id.*, ¶ 33.

14. Plaintiff was not denied communication with his family and the outside world. *See Id.*, ¶ 34.

15. Defendant Thompson testified that there is also a considerable cost component related to the postcard-only policy. Monitoring all inmate correspondence imposes a considerable burden in terms of cost and the burden on staff resources needed for item-by-item

monitoring of inmate letters. Defendant Thompson testified that the postcard-only policy significantly decreases the amount of time and manpower needed to monitor incoming and outgoing mail. *See Id.*, ¶ 35.

16.     Defendant Thompson also testified that as policymaker for WCCF, he knows that there are also other penological reasons for restricting the incoming and outgoing mail of incarcerated persons based on safety and security precautions. *See Id.*, ¶ 36.

17.     WCCF has a duty and responsibility to monitor and restrict what is allowed into the facility through the mail for legitimate penological interests of safety, security, order, and discipline, as well as treatment goals. *See* Second Thompson Declaration (Docket No. 99-1), ¶ 25.

18.     WCCF receives approximately 200 pieces of mail per day**.** *See Id.*, ¶ 12.

## ARGUMENT

### I.     Summary Judgment Standard[1]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[1] Weber County and Davis County Defendants have filed a separate Motion for Summary Judgment (Docket No. 74). That Motion is now fully briefed and ready for decision. To the extent that the arguments in that Motion and in Weber County and Davis County Defendants' Reply Memorandum in Support of their Motion for Summary Judgment (Docket No. 99) are applicable to the arguments presented in this Memorandum, they are hereby incorporated herein by reference. Likewise, Plaintiff has filed Motions for Partial Summary Judgment on his Sixth, Seventh and Eighth Causes of Action (Docket Nos. 152, 158, and 100). Weber County and Davis County Defendants have filed a Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment on the Eighth Cause of Action (Docket No. 113), and is preparing Memoranda in Opposition to Plaintiff's Motions for Partial Summary Judgment on the Sixth and Seventh Causes of Action. To the extent that the arguments contained in those Memoranda in Opposition are applicable to the arguments presented herein, they are hereby incorporated herein by reference.

law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses…." *Celotex v. Catrett*, 477 U.S. 317, 323-324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) allows a party to move "with or without supporting affidavits for summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

Plaintiff bears the initial burden of showing "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record that show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F.Supp. 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Fed. R. Civ. P. 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (Citations omitted). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992) (Citations omitted). Mere allegations and references to the pleadings will not suffice. The Court must, however, "examine the factual record and reasonable inferences therein in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.

1999) (Citations omitted). If the nonmovant fails to meet its burden as to one element of a claim, summary judgment is appropriate on the claim. *Celotex*, 477 U.S. at 322-323.

To defeat a motion for summary judgment, a party cannot merely rest on the allegations contained in the complaint and other filings. The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (Citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Plaintiff cites *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) and *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), for the proposition that his Motion should be held to a less stringent standard due to his pro se status. While it is true that the Tenth Circuit Court stated in *Hall* that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," 935 F.2d at 1110, the court went on to state that "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* The Tenth Circuit Court also held:

> **The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based**. Not every fact must be described in specific detail, and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, **conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based**. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, **the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations**.

*Id.* (Internal citations omitted) (Emphasis added).

As stated above in Weber County Defendants' Responses to Plaintiff's Statement of Elements and Undisputed Material Facts, Plaintiff's Motion and Declaration are replete with such self-serving conclusory allegations. Even allowing for a less stringent standard as required by *Hall*, the Court is well within its discretion to disregard these statements.

Plaintiff's Motion fails both elements of Fed. R. Civ. P. 56(c). Plaintiff cannot demonstrate that there are no genuine issues of material fact entitling him to summary judgment on either his First or Fourteenth Amendment arguments. Likewise, he cannot demonstrate that he is entitled to summary judgment as a matter of law on either his First or Fourteenth Amendment arguments. Summary judgment in Plaintiff's favor on his Fifth Cause of Action is, therefore, inappropriate.

## II.   WCCF's Postcard-Only Policy Does Not Violate Plaintiff's First Amendment Rights.

Plaintiff raises three arguments regarding the postcard-only policy in his Motion. First, Plaintiff argues that, pursuant to *Procunier v. Martinez*, "censorship of outgoing mail is only permissible if it furthers an important or substantial governmental interest unrelated to the suppression of expression." *See Procunier*, 416 U.S. at 413. Second, Plaintiff argues that the postcard-only policy "must be no greater than necessary or essential to the protection of the particular governmental interest involved." *See Id.* Third, Plaintiff argues that the postcard-only policy fails to incorporate sufficient "procedural safeguards." *See Id.* at 417.

Plaintiff's arguments all fail. Regarding Plaintiff's first and second arguments, it is interesting that Plaintiff omits the remainder of the relevant paragraph from *Procunier*, which states:

> This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a

particular letter. **Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty**. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above.

*Id.* at 414 (Emphasis added).

As an initial point, Plaintiff's reliance on the *Martinez* standard is misplaced. The correct standard for evaluating First Amendment rights in the prison context is the "reasonably related" standard articulated in *Turner* and discussed above and in Weber County and Davis County Defendants' Motion for Summary Judgment (Docket No. 74). The general rule is that the regulation of incoming and outgoing prison mail is essentially an administrative matter in which the courts will not intervene, except under the most unusual circumstances. The narrow exception to this rule expressly refers to correspondence with designated public officials, the courts, and the inmate's attorney, for certain specific purposes. *See, e.g., Losee v. Gallegos*, 2014 WL 1338576, *11-*12 (D. Utah 2014); *Wilkerson v. Warden of U.S. Reformatory, El Reno, Okl.*, 465 F.2d 956, 957 (10th Cir. 1972); *Evans v. Moseley*, 455 F.2d 1084, 1087 (10th Cir. 1972).

The United States Supreme Court has established a four-part test to determine the validity of prison policies such as WCCF Policy JE 01/02: (1) there must be a rational connection between the policy in question and legitimate penological objectives; (2) the inmate must prove that there are no alternative measures of exercising the constitutional right open to inmates; (3) the inmate must demonstrate that accommodating his constitutional right would not adversely affect the facility's officers, staff, and inmates; and (4) the inmate must demonstrate the existence of ready alternatives to the facility's policies that fully accommodate the inmate's rights at *de minimis* cost to valid penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-90,

107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir.

2004). As the United States Supreme Court held in *Thornburgh v. Abbott*:

> The Court's subsequent decisions regarding First Amendment rights in the prison context, however, laid down a different standard of review from that articulated in *Martinez*. As recently explained in *Turner*, these later decisions, which we characterized as involving "prisoners' rights," adopted a standard of review that focuses on the reasonableness of prison regulations: **the relevant inquiry is whether the actions of prison officials were "reasonably related to legitimate penological interests." The Court ruled that "such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'"** The Court set forth in *Turner* the development of this reasonableness standard in the respective decisions in *Pell* and *Jones* and in *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), and we need not repeat that discussion here.

*Thornburgh v. Abbott*, 490 U.S. 401, 409, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (Internal

citations omitted) (Emphasis added). The Court went on to state:

> The Court's decision to apply a reasonableness standard in these cases rather than *Martinez'* less deferential approach stemmed from its concern that language in *Martinez* might be too readily understood as establishing a standard of "strict" or "heightened" scrutiny, and that such a strict standard simply was not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons. Specifically, the Court declined to apply the *Martinez* standard in "prisoners' rights" cases because, as was noted in *Turner*, *Martinez* could be (and had been) read to require a strict "least restrictive alternative" analysis, without sufficient sensitivity to the need for discretion in meeting legitimate prison needs. **The Court expressed concern that "every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand," and rejected the costs of a "least restrictive alternative" rule as too high.**

*Id.* at 409–11 (Internal citations omitted) (Emphasis added).

      a.    **Weber County Defendants Provided Legitimate Penological Reasons for the Postcard-Only Policy.**

Applying this analysis to WCCF's outgoing mail policy, Weber County Defendants argue that the policy meets all four of the *Turner* factors. First, there must be a rational connection between the policy in question and legitimate penological objectives. As the United States Supreme Court stated in *Turner*:

> First, there must be a **"valid, rational connection"** between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, **the governmental objective must be a legitimate and neutral one**. **We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression**.

*Turner*, 482 U.S. at 89–90 (Internal citations omitted) (Emphasis added).

Plaintiff himself admits that Weber County Defendants need only make a minimal showing of this connection. *See* Plaintiff's Motion for Partial Summary Judgment on the Eighth Cause of Action (Docket No. 100), p. 15 (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185-1186 (10th Cir. 2002)). Contrary to Plaintiff's Motion, the primary purpose of the postcard-only policy is not "to deliberately suppress speech." *See* Motion, p. 8. The allocation of WCCF resources, both manpower and monetary, do play a factor in the creation of WCCF policies. *See* Second Thompson Declaration (Docket No. 99-1), ¶ 15. But that is not the only, or even the primary, purpose of the postcard-only policy. In addition, Plaintiff does not contest that the efficient allocation of resources is a valid penological objective. Nor does Plaintiff contest that maintaining safety, security, and order within the facilities are valid penological objectives. Furthermore, Plaintiff also does not dispute that controlling what materials enter and exit WCCF through the mail is a legitimate penological objective. There is a common-sense connection

between controlling materials entering and exiting WCCF and the policy. As the court stated in

*Covell v. Arpaio*:

> "[W]hen the inmate does not present enough evidence to refute a **common-sense connection between a prison regulation and the objective** that government's counsel argues the policy was designed to further ... *Turner*'s first prong is satisfied."

*Covell v. Arpaio*, 662 F.Supp.2d 1146, 1154 (D. Ariz. 2009) (Internal citations omitted) (Emphasis added); see also, e.g., *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) (Same).

Likewise, the Tenth Circuit Court has held that inspecting outgoing inmate mail is reasonably related to legitimate penological interests:

> Although outgoing mail generally does not threaten prison order and security, the Court has indicated that a prisoner's personal outgoing mail may be restricted if it falls into a category which poses a threat, including "escape plans, plans related to ongoing criminal activity, and threats of blackmail or extortion." In order to enforce permissible restrictions which are reasonably related to substantial government interests, corrections officers must be able to inspect all outgoing mail… **"[F]reedom from censorship is not equivalent to freedom from inspection or perusal." Although the inspection of mail may chill some inmate speech, it clearly satisfies the Supreme Court's mandates in *Martinez* and *Abbott*.**

*Beville v. Ednie*, 74 F.3d 210, 214 (10th Cir. 1996), implied overruling on other grounds recognized by *Tucker v. Graves*, 107 F.3d 881 (10th Cir. 1997) (Emphasis added).

In addition, unlike the challenged policies in *Procunier*, WCCF's postcard-only policy is neutral. It does not prohibit certain **kinds** of speech. *Compare with Procunier*, 416 U.S. at 415 (Invalidating policies authorizing, *inter alia*, censorship of statements that "unduly complain" or "magnify grievances," expression of "inflammatory political, racial, religious or other views," and matter deemed "defamatory" or "otherwise inappropriate."). Nor does it **totally** prohibit Plaintiff from exercising his First Amendment rights. *Compare with Bounds v. Smith*, 430 U.S.

16

817, 825 (1977). Like other inmates at WCCF, Plaintiff was still allowed to write and receive postcards in the mail. Like other inmates at WCCF, he could make telephone calls. Like other inmates at WCCF, he could have personal visits from family and friends. WCCF's policy regarding outgoing mail clearly passes the first *Turner* factor.

      **b.**    **Weber County Defendants Provided Plaintiff with Adequate Alternative Means to Exercise Protected Rights.**

Second, Plaintiff bears the burden of proving that there are no alternative measures of exercising the constitutional right open to inmates. As the court held in *Turner*:

> A second factor relevant in determining the reasonableness of a prison restriction, as *Pell* shows, is whether there are alternative means of exercising the right that remain open to prison inmates. **Where "other avenues" remain available for the exercise of the asserted right, courts should be particularly conscious of the "measure of judicial deference owed to corrections officials ... in gauging the validity of the regulation."**

*Turner*, 482 U.S. at 90 (Internal citations omitted) (Emphasis added).

Plaintiff admits that there were alternative ways for him to exercise his constitutional rights. Plaintiff does not dispute that he could send postcards, make and receive telephone calls, and receive visitors at the facility. As the Tenth Circuit Court stated in *Wardell v. Duncan*, "alternatives need not be ideal…they need only be available." 470 F.3d at 961. *See also, e.g., Munson*, 673 F.3d at 637 ("The availability of like-books for copying and borrowing from the prison library merely suggests that Munson had alternative, albeit more restricted, access to the books. Allowing reduced access does not mean that barring unfettered access is illegitimate, even if restricted access creates an appearance of inconsistency."). The court in *Covell* reached the same conclusion regarding a similar postcard-only mail policy:

> Metered postcards, telephones, and jail visits may in Plaintiff's view be less than ideal means of communicating with his family and friends, but **jail-provided**

**alternatives need not be ideal**. Plaintiff has presented no evidence to show these alternative means of communicating are unavailable to him.

*Covell*, 662 F.Supp.2d at 1154 (Internal citations omitted) (Emphasis added). WCCF's outgoing

mail policy clearly meets this standard.

> c.  **Plaintiff Cannot Demonstrate That His Proposed Alternatives Will Not Have a Significant "Ripple Effect" on WCCF officers, staff, and inmates.**

Third, Plaintiff must demonstrate that accommodating his constitutional right would not

adversely affect WCCF officers, staff, and inmates. Again, as the court held in *Turner*:

> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. **When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials**.

*Turner v. Safley*, 482 U.S. 78, 90 (1987) (Internal citations omitted) (Emphasis added).

Plaintiff presents no admissible evidence that his proposed alternative to WCCF's

outgoing mail policy does not significantly affect WCCF officers, staff, and other inmates, or

that his proposed alternative of having WCCF personnel inspect each piece of outgoing mail

would have only *de minimis* effect on Weber County Defendants. Plaintiff makes only

conclusory allegations, without support in the record, that such a policy would have no effect.

The court in *Covell* again reached the same conclusion regarding similar issues:

> Plaintiff contends that jail staff could inspect each piece of mail and remove the stamps. **It is not obvious, however, and there is no evidence, that this alternative would accommodate the right at a *de minimis* cost to the jail. Nor does Plaintiff show that this alternative would not cause administrative inconvenience, a factor to be considered under the final Turner prong**.

*Id*. at 1155 (Internal citations omitted) (Emphasis added). Plaintiff needs to do more than make conclusory allegations. Absent Plaintiff's conclusory allegations, the record does not contain undisputed material facts sufficient to support Plaintiff's argument regarding the third *Turner* factor.

> **d.    Plaintiff's Proposed Alternatives Would Not Have *De Minimis* Impact.**

Fourth, Plaintiff must demonstrate the existence of ready alternatives to WCCF's mail policies regarding incoming books:

> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. **But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests**, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. at 90–91 (Internal citations omitted) (Emphasis added).

Plaintiff presents no admissible evidence that his proposed alternatives to WCCF's outgoing mail policy do not significantly affect WCCF officers, staff, and other inmates, or that his proposed alternatives would have only *de minimis* effect on WCCF staff. Plaintiff proposes that WCCF allow inmates to "deposit unsealed envelopes which then could be inspected and sealed by mail staff or to allow mail staff to open and inspect enveloped mail." *See* Motion, p. 4. Plaintiff makes only conclusory allegations, without support in the record, that such policy changes would have no effect on WCCF staff. That is insufficient to pass the fourth *Turner* factor. The court in *Covell* reached the same conclusion regarding similar issues:

> Plaintiff contends that jail staff could inspect each piece of mail and remove the stamps. It is not obvious, however, and there is no evidence, that this alternative

would accommodate the right at a *de minimis* cost to the jail. Nor does Plaintiff
show that this alternative would not cause administrative inconvenience, a factor
to be considered under the final *Turner* prong.

*Id.* at 1155 (Internal citations omitted).

Plaintiff's unsupported conclusions are not statements of undisputed material fact
sufficient to merit summary judgment. Taken together, WCCF's outgoing mail policy passes all
four of the factors outlined in *Turner*. As such, the policy does not unfairly deprive Plaintiff of
his constitutional rights and should be upheld. Plaintiff fails to demonstrate that the undisputed
material facts in evidence in this case indicate that he is entitled to judgment as a matter of law.
Summary judgment in Plaintiff's favor is, therefore, inappropriate.

**III.     WCCF's Postcard-Only Policy Provides Sufficient Due Process.**

Plaintiff's third argument apparently is that WCCF Policy JE 01/02 violates his
Fourteenth Amendment rights by failing to provide "minimum procedural safeguards" before
"censoring" mail sent by inmates. Plaintiff appears to argue that prison officials **must** offer
inmates the same procedural due process the United States Supreme Court discussed in
*Procunier*:

> The District Court required that an inmate be notified of the rejection of a letter
> written by or addressed to him, that the author of that letter be given a reasonable
> opportunity to protest that decision, and that complaints be referred to a prison
> official other than the person who originally disapproved the correspondence.

416 U.S. at 418-419.

Plaintiff misstates the law regarding the necessary procedural due process. Neither the
United States Supreme Court nor other courts have stated that the procedures discussed in
*Procunier* are the **only** allowable procedures. As the Unites States Supreme Court stated in
*Cleveland Bd. of Ed. v. Loudermill,* the core of due process is the **right to notice and a**

20

**meaningful opportunity to be heard**. *See Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). But as the Tenth Circuit Court of Appeals has stated, the "argument that due process always requires an **actual** hearing-rather than an opportunity to be heard-must be rejected." *In re C.W. Mining Co.*, 625 F.3d 1240, 1245 (10th Cir. 2010) (Emphasis in original); *See also, e.g., Munson,* 673 F.3d at 638 (Inmate received all the process he was due in the form of a written notice explaining why he couldn't possess books and a meaningful chance to be heard by a series of prison officials.); *Griffin v. Hickenlooper*, 549 Fed. Appx. 823, 828 (10th Cir. 2013) (unpublished) ("Due process is satisfied when a prison provides a meaningful opportunity for the inmate to send unauthorized property to someone outside the prison as an alternative to having it destroyed.").

Again, the "material facts" Plaintiff cites in support of his claims suffer the same deficiencies as those for his First Amendment claims. Plaintiff makes numerous unsubstantiated conclusory allegations without any support in the record. Such conclusory allegations are insufficient to survive summary judgment. In the present case, Plaintiff did receive due process. Plaintiff was made aware of the postcard-only policy when he entered WCCF. He was also made aware of the procedures for filing grievances when he entered WCCF. Plaintiff filed grievances regarding the postcard-only policy. He pursued these grievances through the grievance process, pursuant to WCCF Policy JD 05. Initially, Defendant Sekulich responded to these Level I grievances in a timely manner. Plaintiff appealed Defendant Sekulich's responses to Level II, pursuant to WCCF policy. Defendant Porter responded to Plaintiff's Level II grievances in a timely manner, again pursuant to WCCF policy. Plaintiff again appealed Defendant Porter's responses to Level III. Pursuant to WCCF policy, Defendant Thompson responded to Plaintiff's Level III grievances in a timely manner. Plaintiff was made aware of WCCF Policy JE 01/02.05

when he entered the facility. He had a "meaningful opportunity to be heard," pursuant to *Loudermill*. The fact that WCCF personnel rejected his arguments does not mean that he was denied adequate procedural due process. As the Tenth Circuit Court of Appeals has stated, "a remedy is not inadequate merely because it is unsuccessful." *Griffin*, 549 Fed. Appx. at 829.

Taken together, WCCF's postcard-only policy passes all four of the factors outlined in *Turner*. As such, the policy does not unfairly deprive Plaintiff of his constitutional rights, and should be upheld. Furthermore, Policy JD 05 provided Plaintiff with adequate procedural due process to protest the postcard-only policy. Plaintiff filed grievances pursuant to Policy JD 05. He had an opportunity to voice his grievances. Summary judgment in favor of Plaintiff on his Fifth Cause of Action is inappropriate.

## CONCLUSION

Plaintiff's Motion is based solely on conclusory allegations not supported by the record. He has failed to demonstrate both that there are undisputed material facts and that he is entitled to judgment as a matter of law. For these reasons, and the reasons argued above, his Motion fails as a matter of law and fact. Weber County Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment on his Fifth Cause of Action.

DATED the 3rd day of July 2017.

DUNN & DUNN, P.C.

/s/ SUSAN BLACK DUNN
SUSAN BLACK DUNN
W. LEWIS BLACK
*Attorneys for Weber County and Davis
County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2017, a true and correct copy of the foregoing **WEBER COUNTY DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIFTH CAUSE OF ACTION** was served *via U.S. First Class Mail, postage prepaid*, on the following:

> Jordan Brewer – *Pro Se Plaintiff*
> Offender Number 212121 PCF G10
> UTAH STATE PRISON
> P. O. Box 250
> Draper, Utah 84020

DUNN & DUNN, P.C.

/s/ KAREN B. JEPPSON, CP
Certified Paralegal