*+\

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JORDAN ALAN NEVES BREWER,<br><br>Plaintiff,<br><br>vs.<br><br>DAVIS COUNTY ET AL.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:15-CV-40 TC<br><br>District Judge Tena Campbell |

Plaintiff, Jordan Alan Neves Brewer, began this suit as a *pro se* pretrial detainee proceeding *in forma pauperis*. (ECF Nos. 4; 225-3, at 135.) In his unverified second amended complaint (SAC), under 42 U.S.C.S. § 1983 (2020), he requests injunctive relief and damages. (ECF No 213, at 38.)

## I. BACKGROUND

• 4/13/15 - Complaint filed. (ECF No. 5.)

• 6/22/15 - Amended Complaint (AC) filed, alleging civil-rights violations by defendants working at Davis County Correctional Facility (DCCF) and Weber County Correctional Facility (WCCF), where Plaintiff had been held. (ECF No. 9.)

• 6/3/16 - AC ordered served. (ECF No. 13.)

• 10/17/16 - *Martinez* report (MR)[1] and summary-judgment motion (SJM), filed by Defendants Russell (WC physician assistant) and Wood (DCCF and WCCF physician). (ECF Nos. 61-62.)

---

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

    In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained MR's function, saying:
        Under the *Martinez* procedure, the . . . judge . . . will direct prison officials to
        respond in writing to the various allegations, supporting their response by
        affidavits and copies of internal disciplinary rules and reports. The purpose of

• 11/18/16 - MR and SJM, filed by Defendant Perry (DCCF and WCCF licensed clinical social worker). (ECF Nos. 71-72.)

• 1/5/17 - Plaintiff's response to Defendant Russell and Wood's SJM. (ECF No. 82.)

• 1/6/17 - Plaintiff's response to Defendant Perry's SJM. (ECF No. 81.)

• 4/28/17 - SJMs granted for Defendants Perry, Russell, and Wood. (ECF No. 132.)

• 9/25/17 - Order granting Plaintiff's motion for appointed counsel and limiting scope of appointment to "assisting Plaintiff in (1) evaluating whether to file a Motion for Leave to Amend the Complaint, and, if appropriate, drafting and filing the motion and [SAC] if deemed appropriate; and (2) obtaining discovery necessary to determine the necessity for and content of a [SAC]." (ECF No. 194, at 2.)

• 1/9/18 - Notice of appearance of appointed *pro bono* counsel. (ECF Nos. 197-98.)

• 4/9/18 - Motion to file SAC. (ECF No. 199.)

• 5/29/18 - Notice of Fulfillment of Limited Appointment and Notice of Withdrawal of Counsel. (ECF Nos. 203-04.)

• 7/9/18 - Motion granted to file SAC and for service on named defendants. (ECF No. 210.)

SAC, (ECF No. 213), names these Davis County (DC) defendants: DC; officer Manfull (personal capacity); and Sheriff Richardson (official and personal capacities). (*Id.* at 2.) SAC names these Weber County (WC) defendants: WC; officer Bonyai (personal capacity); mail clerk Collinsworth (personal capacity); officer Miller (personal capacity); officer Porter (personal capacity); officer Sekulich (personal capacity); and Sheriff Thompson (official and personal capacities). (*Id.* at 3-4.)

---

the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusory allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

Plaintiff asserts these claims under the Federal Constitution: (a) inadequate medical treatment, (*id*. at 23-24, 28-29); (b) retaliation, (*id*. at 24-26); (c) lack of meaningful grievance review, (*id*. at 26-28); (d) illegal book-donation policy, (*id*. at 29-31); and (e) illegal mail policies, (*id*. at 31-35).[2]

On October 9, 2018, as ordered, Defendants filed MR, including nineteen exhibits, with declarations, jail policies and records, and grievance copies, (ECF No. 221), and SJM (ECF No. 223). On November 13, 2018, Plaintiff responded to MR and SJM, with argument, Plaintiff's declaration,[3] jail policy, and medical records. (ECF Nos. 225, 227.) On November 27, 2018, Defendants replied. (ECF Nos. 229.)

Before addressing SJM, though, the Court first screens out two claims on different bases than those discussed by the parties. *See* 28 U.S.C.S. § 1915A (2020) (stating "court shall dismiss the case at any time if the court determines that **. . .** fails to state a claim on which relief may be granted").

---

[2] Another of Plaintiff's claims, based on Religious Land Use and Institutionalized Persons Act, 42 U.S.C.S. § 2000cc-2000cc-5 (2020), has already been dismissed in a prior order. (ECF No. 246.)

[3] Plaintiff's declarations are undated, (ECF Nos. 225-1; 227-1), and therefore do not "satisfy 28 U.S.C. § 1746, which requires both a signature and date of execution for purposes of opposing summary judgment under Rule 56(c)(4)." *McMiller v. Corr. Corp. of Am.*, 695 F. App'x 344, 348 (10th Cir. 2017) (unpublished); *see also Beauclair v. High,* No. 14-3020-SAC, 2015 U.S. Dist. LEXIS 1337, at *25 (D. Kan. Jan. 7, 2015) (concluding undated declaration "improper"); *Elrod v. Walker*, No. 06-3115-SAC, 2011 U.S. Dist. LEXIS 146114, at *15-16 (D. Kan. Dec. 20, 2011) (ignoring "undated unnotarized 'affidavit'" as "neither an admissible affidavit nor a proper declaration under penalty of perjury"); *Hadley v. Volunteers of Am. Care Facilities,* No. 06-CV-1537-WDM-CBS, 2008 U.S. Dist. LEXIS 6262, at *4-5 (D. Colo. Jan. 28, 2008) (referring to "'undated affidavit'" as improper evidence under Rule 56). As in *Elrod*, Plaintiff showed his "awareness of and ability to file admissible evidence," by filing his prior complaints here as documents abiding by § 1746, (ECF Nos. 5, at 29; 9, at 68). *Elrod*, 2011 U.S. Dist. LEXIS 146114, at *16 n.1. The Court therefore strikes Plaintiff's declarations, (ECF Nos. 225-1; 227-1), in support of his opposition, (ECF No. 227), to Defendants' SJM, (ECF No. 223), and does not consider them as part of the evidence available on summary judgment.

## II. SUA SPONTE DISMISSAL FOR FAILURE TO STATE CLAIM

### A. STANDARD OF REVIEW

Evaluating a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which

the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. CLAIMS FOR INJUNCTIVE RELIEF

SAC requests injunctive relief. (ECF No. 213, at 38.) However, SAC itself states that Plaintiff was out of DC and WC custody as of December 6, 2012, when he was transferred to Salt Lake County Jail. (ECF No. 213, at 4.) And, Plaintiff's latest change-of-address filing shows that he was most recently in Bonneville Correctional Facility, a "state-operated half-way house," in Salt Lake City. (ECF No. 245.)

> "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." *Id.*
> "Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance--past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (brackets, ellipses and internal quotation marks omitted). "Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Id.* (internal quotation marks omitted). In other words, "[a] claim for equitable relief is moot absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate

> threat that the plaintiff will be wronged again." *Id.* (internal
> quotation marks omitted).

*Burnett v. Fallin*, 785 F. App'x 546, 551-52 (10th Cir. 2019) (unpublished).

Based on Plaintiff's admitted transfers away from DC and WC, Plaintiff's requests for injunctive relief are moot. *See McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999). Those requests are against **Defendants DC and WC** and their respective sheriffs, **Defendants Richardson and Thompson**. All requests for injunctive relief are therefore dismissed.

### C. CLAIM OF LACK OF MEANINGFUL GRIEVANCE REVIEW

Plaintiff alleges that **Defendants DC, Manfull, and Richardson** gave his grievances only perfunctory review before denying them. (ECF No. 213, at 26-28.) However, "there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished). This claim is thus dismissed.

### III. SUMMARY JUDGMENT (SJ) ON REMAINING CLAIMS

An important word at this section's start: Defendants are not to be lumped together as a group, but should be treated as individuals, each with the defendant's own claim(s) against the defendant, based on the defendant's own behavior. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (stating, because § 1983 is "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants"); *Robbins v. Okla. ex rel. Dept' of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly *who* is alleged to have done *what* to whom, to provide each individual with fair notice as to the basis of the claims

against  him . . . as distinguished from collective allegations") (emphasis in original) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants--"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

That said, this Court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1). Summary judgment's purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998). Once movant meets this burden, it "then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671

(10th Cir. 1999) (citation omitted). In a summary-judgment motion ruling, this Court must

"examine the factual record and reasonable inferences therefrom in the light most favorable to

the party opposing the motion." *Sealock v. Colorado*, 218 F.3d1205, 1209 (10th Cir. 2000).

Plaintiff was specifically notified by the Court of his burden on summary-judgment:

> [I]f Defendants move for summary judgment Plaintiff may not rest
> upon the mere allegations in the complaint.  Instead, as required by
> Federal Rule of Civil Procedure 56(e), to survive a motion for
> summary judgment Plaintiff must allege specific facts, admissible
> in evidence, showing that there is a genuine issue remaining for
> trial.

(ECF No. 210, at 4.) Plaintiff was also given the full texts of Federal Rule of Civil Procedure 56,

(*id*. at 7-8), and District of Utah Local Rule 56-1, (*id*. at 9-11).

## A. CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Based on qualified immunity (QI), the individual defendants move for SJ on unresolved

claims.

> "The doctrine of [QI] protects government officials 'from
> liability for civil damages insofar as their conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known.'" *Pearson v. Callahan*, 555
> U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,
> 818 (1982)). "[QI] balances two important interests--[1] the need
> to hold public officials accountable when they exercise power
> irresponsibly and [2] the need to shield officials from harassment,
> distraction, and liability when they perform their duties
> reasonably." *Id.* The purpose of the doctrine is to provide
> government officials "breathing room to make reasonable but
> mistaken judgments about open legal questions." *Ziglar v. Abbasi*,
> 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563
> U.S. 731, 743 (2011)).
> "Because the focus is on whether the officer had fair notice
> that her conduct was unlawful, reasonableness is judged against the
> backdrop of the law at the time of the conduct." *Kisela v. Hughes*,
> 138 S. Ct. 1148, 1152 (2018) (internal quotation marks
> omitted). When a defendant raises the [QI] defense, the plaintiff

must therefore establish (1) the defendant violated a federal
statutory or constitutional right and (2) the right was clearly
established at the time of the defendant's conduct. *District of
Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Under this two-
part test, "immunity protects all but the plainly incompetent or
those who knowingly violate the law." *Kisela*, 138 S. Ct. at
1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

*Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020).

The test imposes a "heavy two-part burden." *Casey v. W.
Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir.
2007) (internal quotation marks omitted). If the plaintiff fails to
satisfy either part of the two-part inquiry, a court must grant the
defendant [QI]. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th
Cir. 2001). The court has discretion to decide which of the two
prongs of the [QI] analysis to address first. *See Pearson*, 555 U.S.
at 236. "If, and only if, the plaintiff meets this two-part test does a
defendant then bear the traditional burden of the movant
for [SJ]...." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir.
2008) (internal quotation marks omitted).

*Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018); *see also Watson v. Univ. of Utah
Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) ("Only if plaintiff makes that threshold showing
does the burden shift to defendants to show that no material facts remain in dispute that would
defeat defendant's claim of [QI].") (citing *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992)).

Regarding all but one claim, the Court focuses on prong one of the QI analysis--the
violation of Plaintiff's federal constitutional rights--concluding Plaintiff did not establish this
prong and therefore has not carried his burden on SJ. Regarding the book-donation policy, the
Court focuses on prong two of QI--concluding "the right was [not] clearly established at the time
of the defendant[s'] conduct." *Ullery*, 949 F.3d at 1289; *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th
Cir. 2015) (stating presentation of QI defense "*necessarily* included the clearly-established-law
question" which plaintiff had burden "to carry" (emphasis in original)).

9

## 1. INSOMNIA

Regarding pretrial detainees, inadequate-medical-treatment claims are brought under the Fourteenth Amendment. *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992). Two instances of inadequate medical care are alleged: (a) insomnia treatment at DCCF, with **Defendant Sheriff Richardson**'s personal involvement, (ECF No. 213, at 23-24); and (b) insomnia treatment at WCCF, with **Defendant Sheriff Thompson** having "responsibility for the continued operation of the insomnia treatment policy," (*id.* at 28-29).

Richardson and Thompson assert QI as a barrier to liability here. This shifts the burden to Plaintiff to show that Richardson and Thompson violated his constitutional right. *Lundstrom v. Romero*, 616 F.3d 1108, 1118-19 (10th Cir. 1012). To avert SJ, Plaintiff argues each defendant violated his federal constitutional right to adequate medical care.

Court reviewed over a thousand pages of records provided by the parties and found not one instance of either sheriff defendant personally involved in Plaintiff's medical treatment, let alone treatment specifically for insomnia.

### a. LEGAL STANDARDS REGARDING *RESPONDEAT SUPERIOR*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "[A] supervisor cannot be held liable under § 1983 on a *respondeat superior* theory." *Bewley v. City of Duncan*, Nos. 97-6274, 97-6321, 1998 U.S. App. LEXIS 11737, at *17-18 (10th Cir. 1998) (unpublished) (citing *Brown v. Reardon*, 770 F.2d 896, 901 (10th Cir. 1985)).

### b. UNDISPUTED MATERIAL FACTS

Analysis of Plaintiff's claim is based on the following relevant facts drawn from the parties' admissible evidence:

• 1/3/11 - Richardson became DC sheriff. (Richardson decl., ECF No. 221-8, at 3.)

• 2011 - Thompson elected WC sheriff. (Thompson Decl., ECF No. 221-1, at 3.)

• 10/13/11 to 9/13/12 - Plaintiff held at DCCF. (ECF No. 221-8, at 3.) Richardson "deferred . . . to Dr. John Wood, his physician assistants, as well as other medical personnel, in treatment rendered to Mr. Brewer." (*Id.* at 5, 9.)

• 9/13 to 12/6/12 - Plaintiff held at WCCF. (ECF No. 221-1.) Thompson "deferred . . . to the WCCF physician, Dr. John Wood, and PA Richard Russell, as well as all other medical personnel, in treatment rendered to [Plaintiff]." (ECF No. 221-1, at 4.)

• 11/7/12 - Thompson denied Plaintiff's grievance about insomnia treatment. (*Id.* at 5; ECF No. 221-2, at 4; Grievance Resp., ECF No. 221-12, at 246.)

### c. APPLYING LAW TO FACTS

"Plaintiff does not claim that either defendant was present when the alleged constitutional violation [s] occurred, but presumably included the two [sheriffs] solely because of their supervisory role." *Bewley*, 1998 U.S. App. LEXIS 11737, at *17. Further, failure to answer a letter and denial of grievances does not establish personal participation that creates liability. *Thompson v. Orunsolu*, 798 F. App'x 288, 293 (10th Cir. 2020) (unpublished) ("[A] denial of a grievance, by itself, without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)); *see also Stewart v. Beach*, 701 F.3d 1322, 1328 (10th

Cir. 2012) (concluding warden's knowledge of alleged violation when denying grievance insufficient to show personal participation).

Consequently, each sheriff's lack of personal involvement defeats Plaintiff's individual claims against them for inadequate medical treatment. Summary judgment is granted for Richardson and Thompson on these inadequate-medical-treatment claims.

## 2. RETALIATION

Plaintiff's retaliation claim is brought under the First Amendment's proscription on visiting prejudicial consequences upon an inmate for filing grievances. *See Kee v. Raemisch*, 793 F. App'x 726, 730 (10th Cir. 2019) (unpublished) (citing U.S. Const. amend. I, stating, "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances").

Plaintiff asserts **Defendant Manfull** punished him for filing grievances, resulting in a retaliation cause of action. Specifically, Plaintiff states Manfull twice "called [Plaintiff] into the hall and shouted at him aggressively for filing a grievance," and, another time, "intercepted and either destroyed or discarded [Plaintiff's] grievance form," (ECF No. 213, at 24-25).[4]

Responding to Manfull's assertion of QI, Plaintiff argues Manfull violated his federal constitutional right to grieve prison officials' behavior without suffering retaliation.

---

[4] Plaintiff further alleges as retaliatory behavior that "DCCF personnel entered [his] housing unit and completely disarranged [his] and others' belongings under the pretext of a 'search,'" and that some of his "fellow inmates asked him to stop filing grievances due to the retaliation they experienced as a result of [his] grievances." First, Plaintiff has not affirmatively linked Manfull to the allegedly pretextual search, so this is not considered part of the retaliation claim against Manfull. Second, Plaintiff may not ground his retaliation claim on purported actions against other inmates and their feelings or responses toward those purported actions. The Court thus does not further consider how Manfull's behavior may have affected anyone except Plaintiff.

### a. LEGAL STANDARDS

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right [to free speech].'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). Plaintiff must show retaliation's three elements: (1) Plaintiff was involved in "constitutionally protected activity"; (2) Defendants' behavior injured Plaintiff in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; *and* (3) Defendants' injurious behavior was "substantially motivated" as a reaction to Plaintiff's constitutionally-protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Further, an inmate is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998); *Powell v. Laurie*, No. 16-3251-SAC-DJW, 2017 U.S. Dist. LEXIS 127523, at *12 (D. Kan. Aug. 11, 2017) ("Not 'every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim.'" (quoting *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001))).

### b. UNDISPUTED MATERIAL FACTS

Analysis of Plaintiff's claim is based on SAC's unvarnished allegations, accepted as true for this Order only: Plaintiff engaged in constitutionally protected behavior of filing grievances, to which Manfull responded by aggressively screaming at him while holding grievance(s) in his hand and by discarding Plaintiff's grievance form(s). (ECF No. 213, at 24-25.)

### c. APPLYING LAW TO FACTS

Plaintiff contends Manfull violated his First Amendment rights by retaliating against him for filing grievances. The Court accepts as given, for this Order only, that elements one and three are met: Plaintiff grieved--a constitutionally protected activity--and Manfull's behavior of screaming and discarding the grievance(s) was substantially motivated by Plaintiff grieving. However, absence of a "chilling" injury to Plaintiff proves fatal to this claim.

Assessing retaliation's second element, the Court concludes that, accepting Plaintiff's factual allegations as true, Plaintiff has not shown that Manfull unconstitutionally retaliated against him.

First, as to Manfull's alleged screaming behavior, a survey of Tenth Circuit caselaw shows: In *Vreeland v. Vigil*, No. 1:18-CV-3165-PAB-SKC, 2020 U.S. Dist. LEXIS 48731 (D. Colo. Feb. 11, 2020) (R. & R.), *adopted by* 2020 U.S. Dist. LEXIS 47570 (Mar. 19, 2020), a plaintiff contended that defendants "threatened to have [him] transferred to a different level 3 or higher security facility if [he] submitted any more grievances or law suits against them." *Id.* at *29-30 (quotation marks and citation omitted). Concluding plaintiff had not plausibly stated a retaliation claim, the court noted,

> The Tenth Circuit has found that verbal harassment alone is insufficient to state a claim for unconstitutional retaliation. *Requena v. Roberts*, 893 F.3d 1195, 1211-12 (10th Cir. 2018) ("To the extent [plaintiff's] retaliation claim is based on [defendant] calling him a 'dumb Indian,' harassing him 'all night' while in segregation, and placing him on 'nutraloaf' without following proper procedure, such actions alone, although unprofessional and unpleasant, do not constitute adverse action sufficient to support a retaliation claim."); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("[V]erbal threats and name calling usually are not actionable under § 1983.").

> Claim Nine merely alleges that [defendants] "threatened to have [plaintiff] transferred to a different level 3 or higher security facility if [he] submitted any more grievances or law suits against them." There are no additional threats, or more importantly, *corresponding adverse actions*, alleged in the proposed SAC to plausibly state a retaliation claim.

*Id.* at. *30-31 (emphasis added); *see also Buchanan v. Johnson Cty. Sheriff's Dep't*, No. 19-3114-SAC, 2019 U.S. Dist. LEXIS 127527, at *8 (D. Kan. July 31, 2019) (concluding no valid retaliation claim when defendant verbally attacked plaintiff including saying "stop filing grievances") (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (concluding insulting, disrespectful, or sarcastic comments directed at inmate "do not, without more, constitute an adverse action" for stating retaliation claim)); *Johnson v. Doe*, No. 17-CV-2379-GPG, 2018 U.S. Dist. LEXIS 230591, at *15-16 (D. Colo. Jan. 16, 2018) (stating when defendant allegedly tried to keep plaintiff from filing grievances "by starting a yelling match about filing grievances" that "verbal argument is not the sort of injury that would chill a person of ordinary firmness from engaging in constitutionally protected activity"); *Powell*, 2017 U.S. Dist. LEXIS 127523, at *12 (concluding plaintiff failed to state retaliation claim when only "adverse 'action' is a threat" and recognizing "trivial or de minimis injury, or a complete lack of injury . . . will not support a § 1983 retaliation claim").

Second, as to Manfull's alleged behavior of destroying or discarding Plaintiff's grievance(s), a survey of Tenth Circuit caselaw reveals: In *Cooper v. Belcher*, No. 08-CV-1599-CMA-KMT, 2010 U.S. Dist. LEXIS 87649 (D. Colo. Aug. 25, 2010), plaintiff contended that, "in retaliation for his filing of grievances and lawsuits, Defendants . . . came to his cell on a single occasion, located 'civil documents, grievances, etc.' and 'tore them up and flushed them down the toilet.'" *Id.* at *65 (citation omitted). Rejecting the retaliation claim, the Court stated,

> While destruction of legal documents can give rise to a First
> Amendment retaliation claim, the Court finds Plaintiff's allegations
> vague, unsupported, and speculative. . . . [B]eyond general
> categorization, Plaintiff has failed to identify what documents were
> destroyed. Moreover, Plaintiff has failed to allege that he was
> actually injured (i.e., impeded in his efforts to petition the courts
> for redress of his grievances) by the documents' destruction.

*Id*. at *65-66; *Richards v. Stafford*, No. CIV-15-216-R, 2016 U.S. Dist. LEXIS 94713, at *6

(W.D. Okla. June 23, 2016) (R. & R.) (rejecting retaliation claim when as consequence for

plaintiff grieving defendant "threatened curtailment of Plaintiff's use of the grievance process,"

reasoning refusal to give inmate grievance form is not "'type of injury that would chill a person

of ordinary firmness from exercising their constitutional right'" (quoting *Fogle v. Infante*, 595 F.

App'x 807, 810 (10th Cir. 2014))), *adopted by* 2016 U.S. Dist. LEXIS 93662 (July 19).

Likewise, Plaintiff here has not alleged actual injury--i.e., that efforts to petition courts for

grievance redress were impeded by the grievance's destruction.

It is also instructive by analogy to review a case about what would chill an inmate from

filing a grievance under the question of whether a grievance remedy was "unavailable," under 42

U.S.C.S. § 1997e(a) (2020) ("No action shall be brought with respect to prison conditions . . . by

a prisoner confined in any . . . correctional facility until such administrative remedies as are

available are exhausted."), because the inmate was threatened with retaliation for grieving. Thus,

in *Pemberton v. Patton*, No. CIV-14-129-D, 2015 U.S. Dist. LEXIS 48864 (W.D. Okla. Feb. 17,

2015) (R. & R.), *adopted by* 2015 U.S. Dist. LEXIS 48062 (Apr. 13, 2015), the plaintiff alleged

that defendant prison official retaliated against him for filing a grievance "by calling him a 'rat.'"

*Id*. at *62. That court concluded:

> Plaintiff's allegations are not sufficient . . . to permit a
> reasonable inference that a reasonable inmate in Plaintiff's shoes

would believe himself threatened or intimidated to such an extent as to make exhaustion unavailable. *See* Pl.'s Resp. at 5-6. "Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). . . . A single prison official verbally labeling an inmate a "rat," one time, does not support an inference of "threats or intimidation" that reasonably would prevent the inmate from pursuing administrative remedies.

*Id*. at *63.

With these examples in mind, the Court concludes Plaintiff's retaliation claim against Manfull fails due to his lack of evidence showing he sustained a "chilling" injury. Plaintiff thus has not shown that Manfull violated his constitutional rights here and is entitled to QI. In sum, Manfull merits summary judgment and is dismissed from this case.

### 3. FREE-SPEECH AND DUE-PROCESS CLAIMS REGARDING MAIL POLICIES

### a. BOOK-DONATION POLICY

The claim regarding WCCF's book-donation policy is brought under the First Amendment's proscription on burdening free speech. Plaintiff also alleges loss of due process here, under the Fifth Amendment ("No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use . . . .") and Fourteenth Amendment ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

Plaintiff names these WCCF defendants here: **Bonyai, Collinsworth, Miller, Porter, Sekulich and Thompson**.

Specifically, he asserts these defendants enforced against him an unconstitutional WC policy that "[b]ooks received for inmates . . . shall become property of the WCCF upon release

of the inmate who received the book.'" (ECF No. 213, at 30 (quoting WCCF Policy JE 01/02.05).)

As stated in SAC, these are the allegations per defendant:

(1) On October 3, 2012, Collinsworth and Miller "seized . . . five books [sent to Plaintiff by his attorney] and Collinsworth told [Plaintiff] that he would have to agree to 'donate' them to WCCF before he would be allowed to receive them." (*Id*. at 17.)  The five books were a law dictionary, *New World Dictionary*, thesaurus, *Federal Civil Rules Booklet*, and *Nolo's Criminal Law Handbook*. (*Id*. at 17.)

(2) On October 5, 2012, Porter "told [Plaintiff] that if he agreed to donate three of the [above] books, he could have the remaining two without having to donate them," to which Plaintiff "reluctantly agreed." (*Id*. at 18.) "Porter stated that if [Plaintiff] refused that offer, all five books would be locked up out of [Plaintiff's] possession and he would not be able to receive them until he was released from WCCF." (*Id*.)

(3) On October 14, 2012, Bonyai told Plaintiff that two more books had come for him (*Son of Neptune* and *Mark of Athena*), "but that he would be required to 'donate' if he wanted to have possession of them," to which Plaintiff "agreed under protest." (*Id*.)

(4) On November 9, 2012, Plaintiff was required by Sekulich to "donate" three more books (*The Serpent's Shadow*, *The Throne of Fire*, and *The Fire of the Covenant*) or they "would be withheld." (*Id*.)

(5) On November 18, 2012, Miller required Plaintiff to "donate" a book (*Drawing on the Powers of Heaven*) or it would be withheld. (*Id*. at 19.)

(6) Between September 13 to December 6, 2012, Plaintiff was also required to "donate" *Holy Bible*, *Book of Mormon*, *Doctrine and Covenants*, *Pearl of Great Price*, *The Work and the Glory*, and *Doctrine and Covenants Student Manual*. (*Id.*)

(7) When Plaintiff "refused to 'donate' the book Glenn Beck, *Agenda 21*, it was withheld from [Plaintiff] and he was not able to read it while at WCCF." (*Id.*)

Thompson's name does not appear in this summary of individual claims. And it turns out that his only personal participation was to respond to Plaintiff's grievances. (Grievance Resp., ECF No. 221-12, at 139.) He thus is not affirmatively linked and must be dismissed as a book-donation-policy defendant. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating each defendant's personal participation is essential allegation in civil-rights case); *see also Thompson*, 798 F. App'x at 293 ("[A] denial of a grievance, by itself, without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." (citation omitted)); *Stewart*, 701 F.3d at 1328 (stating warden's knowledge of alleged violation when denying grievance insufficient to show personal participation); *Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support § 1983 liability).

### i. APPLICABLE QI LAW

This section focuses not on prong one of the QI analysis (violation of constitutional rights), but on prong two, which is Plaintiff's failure to carry his burden to show his rights were "clearly established at the time of the defendant[s'] conduct." *Ullery*, 949 F.3d at 1289.

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658,

664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742). Accordingly, the Supreme Court has repeatedly admonished circuit courts "not to define clearly established law at a high level of generality." *Kisela*, 138 S. Ct. at 1152. Though "a case directly on point" is not required, "existing precedent must have placed the constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019).

　　"Ordinarily . . . there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other [circuits] must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted).
　　. . . .
　　[W]e decline to consider district court opinions in evaluating the legal landscape for purposes of qualified immunity.

*Ullery*, 949 F.3d at 1291, 1300 (other citations omitted); *see also Watson*, 75 F.3d at 577 (stating burden "quite heavy" because "plaintiff must do more than simply allege the violation of a general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited'") (ellipses in original) (citations omitted).

　　The QI analysis "may appear unduly formalistic . . . [b]ut this is the task required of [courts] under the [QI] precedents [courts] are obligated to follow." *Ullery*, 949 F.3d at 1301.

## ii. UNDISPUTED MATERIAL FACTS

　　Analysis of Plaintiff's claim is based on the following relevant facts drawn from the parties' admissible evidence:

• At relevant time, WCCF policy manual about "Books Received by Mail" stated: (i) Inmates may receive books through mail only if delivered by United States Postal Service, "unless

otherwise pre-authorized by the Jail Commander"; or, with receipt, from publisher or book store. (ECF No. 221-11, at 30.) (ii) "Books received for inmates as described above shall become property of the WCCF upon release of the inmate who received the book." (*Id*.) "Exceptions . . . concerning books received by mail for inmates may be approved only by the Jail Commander/ designee." (*Id*. at 31.)

• At relevant time, based on need to maintain "safety" and "order," WCCF asserted "responsibility to control property that is received and stored by inmates." (Thompson Decl., ECF No. 221-1, at 9.)

• At relevant time, WCCF policy defined "legal mail" as "privileged mail," which was defined as "mail which is entitled to special confidential handling; mail between an inmate and an individual or entity authorized by this chapter and contains legal information which as a matter of law should not be read by anyone other than the addressee." (ECF No. 221-11, at 79.)

• At relevant time, WCCF policy stated, "[C]orrespondence between inmates and their attorneys may be afforded privilege as defined in this chapter . . . ." (*Id*. at 81.)

• At relevant time, WCCF policy stated,

> Inmates have interests including: . . . communication with . . . their attorneys [and] . . .privilege in communicating with their attorneys when . . . that communication involves their legal cases [and] . . . the information is not part of the public domain or is otherwise legally available to WCCF officials.

(*Id*.)

• At relevant time, WCCF policy stated, "Attorney mail should only be declared to be privileged if . . . it contains material which is related to the attorney's representation of the inmate; and . . . it is confidential in nature (information not otherwise available to the WCCF)." (*Id*. at 83.)

• Under WCCF policy, Plaintiff was "allowed to retain possession of books he did not want to donate by keeping them in his property locker until he was released," when such books were "returned to him when he transferred out of WCCF on December 6, 2012." (ECF No. 221-1, at 14.)

• 10/3/12 - Plaintiff filed grievance asserting seizure of his "legal mail" (books)--i.e., *Federal Rules of Civil Procedure*; criminal law book, legal dictionary, dictionary, and thesaurus. (*Id*., at 9.) Books did not meet WCCF policy definition of "privileged legal correspondence." (*Id*.)

• 10/9/12 - Plaintiff was granted "contract privilege" for "four legal reference books titled *Busted by the Feds, the Book*, *Prisoner's Self Help Ligation Manual*, *Federal Civil Rules Book*, and *Nolo 12th Edition The Criminal Law Handbook*. (*Id*. at 10; ECF No. 221-14, at 2.) Contract "agreed that [Plaintiff] did not have to donate these books to the facility and could take these books with him upon release." (ECF Nos. 221-1, at 10; 221-14, at 2.)

21

• 10/17/19 - WCCF grievance response stated that Plaintiff "was not forced to donate books but can opt to have books placed in his property locker until he was released or relocated, and he could ask his family not to send him books." (*Id*. at 10-11.)

### iii. APPLYING LAW TO FACTS

Having thoroughly reviewed Plaintiff's responses to Defendants' assertion of QI--in which Plaintiff shows he thoroughly understands the controlling standards and includes legal citations, (ECF No. 227, at 123-27, 146-167)--the Court sees that Plaintiff argued and analyzed, under QI prong one, that his constitutional right was breached. But Plaintiff has not met his burden, under QI prong two, to show his "right was clearly established at the time of the defendant[s'] conduct." *Ullery*, 949 F.3d at 1289.

Plaintiff cites no cases at all like the factual scenario here--i.e., claims asserting breach of freedom-of-speech and due-process rights, when Plaintiff could receive and possess books so long as he agreed the books would become jail property upon him leaving the jail.

Still, the Court searched for similar factual scenarios in hundreds of federal cases, from before October 2012. The "first step in the clearly-established-law inquiry is to consider cases of controlling authority in this jurisdiction, which would settle the question." *Id.* at 1292. The Court thus started by trying to find "Supreme Court and Tenth Circuit decisions that have addressed the asserted right." *Id*. None such case showed law governing a factual scenario similar to Defendants' behavior was clearly established at the time of the behavior. And, again, Plaintiff has not "identified any case from the Supreme Court or [Tenth Circuit] squarely addressing whether Defendant[s'] conduct violates the [First, Fifth, or Fourteenth] Amendment[s]." *Id.* at 1294.

"In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other

jurisdictions." *Id*. at *22 (citing *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). However, a search of out-of-circuit law also revealed no applicable cases.

Under the factual scenario at issue, there is not clearly established law that would have put defendants on notice that their actions could have violated Plaintiff's constitutional rights. Plaintiff therefore has not carried his QI burden, resulting in dismissal of this claim and its related defendants with no other claim pending against them: Defendants Bonyai, Collinsworth, Miller, Porter, and Sekulich.

### b. MAIL POLICIES--BULK-MAIL BAN/INCOMING AND OUTGOING MAIL LIMITED TO POSTCARDS

Plaintiff contends his rights were breached by WCCF policies disallowing him from (i) receiving bulk mail, including magazines, (ECF No. 213, at 31), and (ii) sending or receiving personal mail on anything but postcards, (*id*. at 33-35). Of his mail-policy claims, Plaintiff states: "Sheriff Thompson is sued in his individual capacity . . . because . . . he possessed responsibility for the continued operation of bulk rate mail ban . . . incoming mail policy [and] . . . outgoing mail policy." (*Id*.) However, SAC does not at all allege Defendant's personal participation in handling mail, including books, magazines, and postcards. (*Id*. at 31-35.)

Defendant Thompson asserts QI as a barrier to liability here. This assertion shifts the burden to Plaintiff to show that Thompson violated his constitutional rights. *Lundstrom v. Romero*, 616 F.3d 1108, 1118-19 (10th Cir. 1012). To avert SJ, Plaintiff argues Defendant Thompson violated his federal constitutional rights regarding mail.

### i. LEGAL STANDARDS FOR *RESPONDEAT SUPERIOR*

"Individual liability under § 1983 must be based on personal involvement in the alleged

constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). "[A] supervisor

cannot be held liable under § 1983 on a *respondeat superior* theory." *Bewley*, 1998 U.S. App.

LEXIS 11737, at *17-18 (citing *Reardon*, 770 F.2d at 901).

### ii. UNDISPUTED MATERIAL FACTS

Analysis of Plaintiff's claim is based on the following facts drawn from the parties'

admissible evidence:

• At relevant time, WCCF policy manual stated: "Bulk-rate mail shall be refused." (ECF No.
221-11, at 28 (quoting WCCF Policy JE 01/02.02L).) "[P]ersonal mail is limited to metered or
pre-stamped plain postcards. Which includes any mail not legally entitled to a designation of
privileged; mail to family, friends, business associates, clergy, the news media." (*Id*. at 23
(quoting WCCF Policy JE 01/01.04).) "The Mail Staff/Clerk shall initiate procedures to
withhold/reject mail which violates policy . . . ." (*Id*. at 39 (quoting WCCF Policy JE
01/03.06A).) "If it is necessary to refuse delivery of an item of mail, the Mail Staff/Clerk shall . .
. notify the prisoner . . . and . . . return the denied mail to sender . . . ." (*Id*. at 40 (quoting WCCF
Policy JE 01/03.06B).)

• 10/29-30/12 - **Defendant Thompson** denied Plaintiff's grievances about bulk-mail ban and
consequent inability to receive magazines, (ECF Nos. 221-1, at 9; 221-12, at 210), and policy
allowing post cards only for personal mail. (ECF Nos. 221-1, at 7; 221-12, at 220).

### iii. APPLYING LAW TO FACTS

In setting forth the undisputed facts here, the Court has reviewed over a thousand pages

of records provided by Defendant and found not one instance of Defendant Thompson personally

involved in Plaintiff's mail comings and goings.

"Plaintiff does not claim that . . . defendant was present when the alleged constitutional

violation[s] occurred, but presumably included the . . . [sheriff] solely because of [his]

supervisory role." *Bewley*, 1998 U.S. App. LEXIS 11737, at *17. Further, grievance denials do

not establish personal participation that creates liability. *Orunsolu*, 798 F. App'x at 293 ("[A] denial of a grievance, by itself, without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." (citation omitted); *see also Stewart*, 701 F.3d at 1328 (concluding warden's knowledge of alleged violation when denying grievance insufficient to show personal participation).

Consequently, Defendant Thompson's lack of personal involvement defeats Plaintiff's individual claim against him for violation of his constitutional rights regarding bulk mail and postcards.

## B. CLAIMS AGAINST COUNTIES AND SHERIFFS

Plaintiff alleges that **Defendants DC and WC**, and **Defendant sheriffs** *in their official capacities*, had policies and customs that violated his federal constitutional rights. He asserts that each county defendant and sheriff defendant "failed to provide adequate insomnia treatment as a custom, policy, or practice in violation of the Eighth Amendment."[5] (ECF No. 213, at 24, 29). And he contends that WC and Sheriff Thompson instituted unconstitutional book-forfeiture and mail policies. (*Id*. at 29-35.)

### 1. OFFICIAL V. INDIVIDUAL CAPACITY SUITS

The Court follows the Supreme Court's example in "careful adherence to the distinction between personal- and official-capacity suits." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See*, *e. g., Scheuer* v. *Rhodes*, 416 U.S. 232, 237-238 (1974).

---

[5] As noted above, because Plaintiff was a pretrial detainee, the proper source of his right to adequate medical treatment was grounded in the Fourteenth Amendment. *Frohmader*, 958 F.2d at 1028.

Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell* v. *New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n.55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985). It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See., e.g., Monroe v. Pape*, 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, *Polk County* v. *Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell, supra*, at 694); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City* v. *Tuttle*, 471 U.S. 808, 817-818 (1985); *id*., at 827-828 (BRENNAN, J., concurring in judgment). When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. *See Imbler v. Pachtman*, 424 U.S. 409 (1976) (absolute immunity); *Pierson v. Ray*, 386 U.S. 547 (1967) (same); *Harlow*, 457 U.S. at 800 (qualified immunity); *Wood* v. *Strickland*, 420 U.S. 308 (1975) (same). In an official-capacity action, these defenses are unavailable. *Owen* v. *City of Independence*, 445 U.S. 622 (1980); *see also Brandon* v. *Holt*, 469 U.S. 464 (1985). The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

*Graham*, 473 U.S. at 166-67; *see also Brandon*, 469 U.S. at 471 ("[A] judgment against a public servant in his official capacity imposes liability on the entity that he represents . . . ." (quotations omitted)).

"The Supreme Court 'has repeatedly refused to extend [Eleventh Amendment] sovereign immunity to counties." *Couser v. Gay*, No. 19-3088, 2020 U.S. App. LEXIS 16386, at *4 (10th Cir. May 22, 2020) (quoting *Northern Ins. Co. of New York v. Chatham Cty.*, 547 U.S. 189, 193 (2006)). "It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity." *Id*.

With this backdrop, the Court recognizes, first, the redundancy of naming as defendants both DC and DC Sheriff Richardson in his official capacity, and both WC and WC Sheriff Thompson in his official capacity. *See, e.g., Pittman v. City of Aurora,* No. 19-CV-2209-PAB-NRN, 2020 U.S. Dist. LEXIS 17375, at *9-10 (D. Colo. Jan. 31, 2020) (dismissing claims against municipal defendants in official capacities as duplicative of claims brought against municipality); *see also Stuart v. Jackson*, 24 F. App'x 943, 956 (10th Cir. 2001) ("[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." (quoting *Myers v. Okla. Cty. Bd. Of Cty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). The Court thus follows other courts' examples in dismissing official-capacity claims against Sheriffs Richardson and Thompson.[6] *See Pittman*, 2020 U.S. Dist. LEXIS 17375, at 10 ("[W]here a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as 'duplicative' or 'redundant' of the claim against the municipal entity." (citing *Leadholm v. City of Commerce City*, No. 16-CV-2786-NEH, 2017 U.S. Dist. LEXIS 70657, at *14-15 (D. Colo. May 9, 2017))).

---

[6] Further, though Plaintiff starts out SAC, under the heading, "Parties," by generally stating each sheriff is "sued in both his official and individual capacity," (ECF No. 213, at 2, 3), he specifies under each "Claim for Relief" that the sheriffs are each "sued in his individual capacity," (ECF No. 213, at 24, 28, 29, 31, 33-35).

Second, the claims against DC and WC are not subject to dismissal under Eleventh Amendment immunity.

## 2. POLICY OR CUSTOM

The Court now examines rules governing each county defendant's potential liability:

> "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Rather, a municipality can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Additionally, a city faces liability under § 1983 if a deprivation of constitutional rights is caused by a municipal "custom." *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003) ("'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.").

*Fuersch v. Southwest Airlines Co.*, 439 F.3d 1197, 1210 (10th Cir. 2006); *see also Bewley*, 1998 U.S. App. LEXIS 11737, at *17 ("In a § 1983 action, the [c]ity . . . may be held liable only for its own unconstitutional policies and not for the tortious or unconstitutional actions of its employees.").

"A municipality may be liable only if a municipal actor committed a constitutional violation." *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) (citing *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009) (rejecting argument that "county can be liable, even if no individual government actor is liable"); *see also Bewley*, 1998 U.S. App. LEXIS 11737, at *17 ("[T]he [city] may not be held liable under [§ 1983] absent an underlying constitutional violation by its officers.") (citing *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995)).

### a. INSOMNIA

Plaintiff contends he was harmed because Defendants DC and WC had an unconstitutional policy or custom of refusing insomnia treatment. However, between the Court's prior order granting summary judgment on the insomnia issue for Defendants Perry, Russell, and Wood, (ECF No. 132), and this Order granting summary judgment for Defendants Richardson and Thompson on insomnia, there has not been the requisite conclusion that "a municipal actor committed a constitutional violation." *Burke*, 935 F.3d at 998. Summary judgment is thus granted for DC and WC on the claim that they had an unconstitutional policy or custom regarding insomnia treatment.

### b. BOOK-DONATION AND MAIL POLICIES

Plaintiff was a pretrial detainee when he filed this case, so an overarching theme to keep in mind for this analysis follows:

> Before considering [these] . . . claims, it is helpful to review the legal framework for analyzing constitutional claims a pretrial detainee like [plaintiff] brings against state actors. Because pretrial detainees in state custody have not been adjudicated guilty, they have a right under the Fourteenth Amendment's Due Process Clause not to be punished. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Courts must therefore decide whether a condition or restriction of pretrial detention "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. A detainee can establish unconstitutional pretrial punishment upon "a showing of an expressed intent to punish on the part of detention facility officials." *Id.* Although detention-facility officials cannot "justify punishment," *id.* at 539 n.20, a restriction or condition that "is reasonably related to a legitimate governmental objective . . . does not, without more, amount to punishment," *id.* at 539 (internal quotation marks omitted). But a court may infer an intent to punish "if a restriction or condition is not reasonably related to a legitimate governmental goal--if it is arbitrary or purposeless." *Id.*

*Khan v. Barela*, No. 19-2056, 2020 U.S. App. LEXIS 9438, at *5 (10th Cir. Mar. 26, 2020)

(unpublished).

Now turning to the generally applicable substantive law, the analysis in *Turner v. Safley*,

482 U.S. 78 (1987), applies to challenges of jail publication and mail policies:

> Under *Turner,* "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. In making this determination, we are guided by four factors. *Id.* at 89-90.
>
> "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89 (quotations omitted). The logical connection between the regulation and its asserted goal(s) cannot be so remote as to render the regulation arbitrary or irrational. *Id.* at 89-90. The legitimate governmental objective must also be neutral. *Id.* at 90. A regulation restricting an inmate's First Amendment rights must operate without regard to the content of the expression. *Id.* Where a regulation furthers an important or substantial government interest unrelated to the suppression of expression, the neutrality requirement is met. *Thornburgh,* 490 U.S. at 415. In other words, where prison officials "draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' . . . ." *Id.* at 415-16.
>
> Second, we ask "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. "[T]he right in question must be viewed sensibly and expansively." *Thornburgh v. Abbott,* 490 U.S. 401, 417 (1989) (quotations omitted). "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner,* 482 U.S. at 90 (citation and quotations omitted). The "alternatives need not be ideal[;] they need only be available." *Wardell v. Maggard,* 470 F.3d 954, 961 (10th Cir. 2006) (quotations omitted). Even if the alternative is not the "best method from the inmate's point of view, . . . the second *Turner* factor does not undercut the challenged restriction." *Id.* at 961-62 (quotations omitted).

Third, we examine the impact accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources. *Turner,* 482 U.S. at 90.

> In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. When accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.

*Id.* at 90 (quotations omitted); *see also Thornburgh,* 490 U.S. at 418 (where the right in question can only be exercised "at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, the  courts should defer to the informed discretion of corrections officials") (citation and quotations omitted).

Finally, we determine whether obvious, easy alternatives exist that fully accommodate inmates' rights at *de minimis* cost to valid penological interests. If so, the regulation may not be reasonable but an "exaggerated response" to prison concerns. *Thornburgh*, 490 U.S. at 418 (quotations omitted); *Turner,* 482 U.S. at  90. However, "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,* 482 U.S. at 90-91. Nevertheless, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

*Jones v. Salt Lake Cty*., 503 F.3d 1147, 1153-54 (10th Cir. 2007).

Defendant WC argues that, under undisputed material facts, its policies pass each *Turner* element, thus warranting summary judgment. However, as well as Plaintiff argued these complex issues *pro se*, it is clear that he may need the expert help of counsel to present the best arguments

possible regarding these important claims. The Court therefore denies summary judgment to WC

for now, pending Plaintiff's affirmation that he wants to proceed further with these claims.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

**(1)** All requests for injunctive relief are **DISMISSED** as moot, Plaintiff having been transferred

from custody of Davis and Weber Counties.

**(2)** Plaintiff's claim of lack of meaningful grievance review is **DISMISSED** for failure to state a

claim upon which relief may be granted.

**(3)** Based on qualified immunity, the individual defendants' summary-judgment motion is

**GRANTED**. (ECF No. 223.)

**(4)** As to Defendants Davis and Weber Counties, summary judgment on the inadequate-medical-

treatment claim is **GRANTED**; this results in Davis County's dismissal from the case.

Meanwhile, summary judgment for Weber County on the book-donation and mail policies is

**DENIED** for now. (ECF No. 223.) Thus, the only remaining defendant here is Weber County,

and the only remaining claims regard the book-donation and mail policies.

**(5)** Because Plaintiff was last heard from over thirteen months ago--when he filed a change of

address, showing he was temporarily located in a halfway house, (ECF No. 245)--Plaintiff must

within thirty days show a willingness to further prosecute this case by updating his address with

the Court. Failure to respond will result in dismissal of the remaining claims. Once it has heard from Plaintiff, the Court will set parameters for further litigation of the remaining claims.

DATED this 1st day of June, 2020.

BY THE COURT:

JUDGE TENA CAMPBELL
United States District Court